The appellants respectfully request that this court reverse a district court's order and remand the case with instructions to enter a preliminary injunction that enjoins the appellants. Counsel, let me be sure the clock is working. Okay, you can you can either repeat it or not. Well, your honors, we respectfully request that the court enter a preliminary injunction that enjoins the appellees from enforcing the statute that is before this court. The district court abused its discretion when it denied the appellant's motion for a preliminary injunction. The opinion relied upon erroneous legal conclusions and clearly erroneous factual findings. All the data phase factors weigh in favor of the preliminary injunction, and I think it's important for purposes of today to set forth what this statute does in fact provide. So Minnesota Statute 181.723 was revised in 2024, and as the court is aware through amicus briefs that were filed with the court, how that law came into existence is another issue subject to another day. But in any event, under this statute, it essentially creates what is referred to as a 14-factor test to determine whether workers in the construction industry are employees versus independent contractors. And if any one of those factors is missed, those workers become employees of the construction company. So as an example, under these factors, under the 14 factors, at the time services are provided, the contractors have to have a contract that's fully executed within 30 days. They have to have a contract that specifically identifies the services that are to be provided. They need to submit invoices, receive payment. They must provide compensation on a commission per job or competitive basis. They must incur the main expenses and costs related to providing the specific services, and they must maintain their registration or their certificate with the Secretary of State in good standing at all times. Not to mention that they have to realize a profit or loss as it relates to the cost of expenses. And as I noted, under this statute, if any one of the 14 factors is missed at the time the services are provided, the statute is violated, and there are economic and criminal consequences that flow. To give you an example, Your Honor, if a contract is not signed within 30 days of the work being conducted, and there are plenty of declarations that are before this court where it is common that the contracts are not signed within 30 days. If those contracts aren't signed within 30 days, all of the subcontractors' employees become employees of the prime contractor. And in that instance, in that one example, then all of the employees for the subcontractor are entitled to the wages and the benefits that are offered by the general contract. In addition, you have the general contractor that has a responsibility to make employer contributions, to unemployment compensation, they need to maintain workers' compensation, they have to pay Social Security, they have to pay Medicare, just because they didn't have a contract signed within 30 days. Counsel, the statute may be extremely onerous, it may be of questionable wisdom, but we have to look at whether it's constitutional, and one of the most important things in my mind is the level of scrutiny here, and that's often case dispositive. Is there any precedent supporting the position that a civil statute can be considered criminal in nature because of criminal penalties that might be available under some other separate statute? Yeah, so there's a couple things that I would like to point out, Your Honor, with regard to this particular statute. Because first and foremost, we don't believe that this statute is in fact a civil statute. It is criminal in nature, and there are a few things that I want to point out with regard to that, and then I'll answer your question as well. Would you agree that it's civil on its face? No, I do not, and I'll explain why. It's in sections of Minnesota law that are all civil, right? So is that a yes or no? It's in a section of Minnesota laws that are civil? Yes, within within the state's, the appellee's brief before the district court, and an oral argument raised before the district court, we noted that 181.723, a violation of 181.723 is a misdemeanor. It is specifically a misdemeanor, and that falls under Minnesota Chapter 326B.082 Subdivision 16, where it specifically says, a violation of this statute is a misdemeanor. So, Judge Graf, to your point, if we just look at 181.723, you're looking at it in light, in isolation to the overall scheme set forth by the legislature. In the sense of, they're saying, hey, you violate 181.723. That's a misdemeanor. That's specifically built into the Minnesota statutes, but in addition, you have additional provisions under Chapter, Minnesota Chapter 181, that relate to if you fail to pay benefits or vacation, if you fail to pay workers' comp, or you fail to pay unemployment compensation, or if you engage in wage theft under Chapter 609. All of those come into existence under 181.723, because there's a failure to pay the wages. If there was actually a prosecution under one of those statutes, couldn't there be an as-applied challenge at that time? There absolutely could be. But to answer your question, you had also asked with regard to, are there cases that can convert a civil statute into a criminal statute, and I point the court to the Supreme Court's case in Kennedy v. Mendoza, where the court referenced how the statute is historically regarded. We have the Department of Labor and Industry, who is saying in meetings, that when it comes to misclassification, misclassification is not only civil in nature, but it's also criminal in nature. We can also look at the penalties that are assessed here as well, and the penalties are significant. For each violation, a contractor can face a $10,000 penalty for each individual that is misclassified. And so in our briefings and in the Joint Appendix, there are declarations where the declarants reference, where they have multiple subcontractors that are working on a job site, and if they fail to have a contract signed within that 30 days, they could be looking at 30 individuals being determined to be misclassified for purpose of the statute, and the penalties flow up to a $10,000 penalty per violation for failing to classify them as employees. So we do believe that in this instance, this statute, the strict scrutiny should be applied in this setting. And we say that we say that in part of because of the statutory scheme work under Chapter 181. Also, the reference in 326B.082 Subdivision 16, that actually says it's a misdemeanor to violate 181.723. Otherwise, if we don't look at the full scheme of the statute, then the legislatures can avoid this strict scrutiny, and they'll say, well, gee, it's not built into the statute specifically in 181.723. Therefore, we're going to put it over here, and we'll never be challenged with regard to the meaning of what this statute means and having strict scrutiny apply. And when a statute has a criminal penalty attached to it, the general public should have notice, adequate notice, of what is prohibited. And in addition, the statute should not lend itself to arbitrariness as it relates to enforcement. And with regard to the arbitrariness of the enforcement of this statute, you had the district court who essentially said, look, with regard to this statute, it's not arbitrary because, well, the Department of Labor and Industry issued frequently asked questions, and therefore, you can rely on these FAQs. But if you read the FAQs, they say these are not binding. They're not considered law. They're not rules. They didn't go through the rulemaking process. Isn't there an administrative procedure, too, when DLI finds a violation that one of your clients could appeal and work through that process? Sure. Didn't the district court rely on that as well? Yes, Your Honor. So, and then the second piece is the district court relied upon the Administrative Procedures Act, Chapter 14, of the Minnesota statutes. And essentially what happens in that case is the Department of Labor and Industry can say, hey, there's a violation. Just like a policeman can say there's a violation of criminal statute. And in both instances, the general public should know what the statute means before you go through the process of either going to criminal court. Counsel, you brought up the policeman. What about disorderly conduct? What about in Missouri, I think it's a riot. It takes three people standing at the street corner. Sorry, I don't know Minnesota to give you an example. But, and the antitrust laws say combinations and restraint of trade, and that's been held unconstitutional, and those have criminal penalties too. So, how do you react to that long-standing deference to legislatures to make these kind of calls? Well, first with regard to the antitrust, I'd say that's civil in nature. Counsel, it has criminal penalties. Okay, so, and I'm not familiar with the antitrust case that you're referring to. We're far out in the field. Go ahead. In any event, when it comes to a criminal statute, and this particular statute is, in fact, criminal in nature. You apply strict scrutiny, and the general public has a right to know what the statute means, and they should not be subject to arbitrary enforcement. Now, to your point, are there scenarios where the courts say, well, that is not vague, and that's not ambiguous. Absolutely. I can, we concede that there are cases where the courts say that it's, that certain statutes are not vague and ambiguous, but we're not going to reference statutes that aren't before this court. We're referencing this particular statute that has criminal penalties attached, and I want to point out one of the items just as it relates to the ambiguity of this statute, and that is, one of the factors provides that the contract has to identify the specific services to be provided under the contract. Okay, so the question becomes, what are specific services? We have declarants who have testified that, how they have had contracts, that they're verbal in nature. They've talked about how compliance with this statute, because of its vagueness, is next to impossible to comply. So, Dolly comes out. Let me ask you, when we're trying to figure out if the statute is vague, what relevance is kind of industry usage and past practice? I mean, it may be that the legislature just came in and said, we're changing the rules of the game, and I understand your clients don't like the new rules, because they're a big change. But, is it more than that? In other words, do your clients' past practices, how does that relate to our analysis of vagueness? Yes, thank you, Your Honor. It absolutely does weigh in in your decision-making, which is, you know, there's a lot of reference to, hey, you can take a look at the dictionary, and the dictionary has common terms that are, you know, defined, but the case law instructs that the court look at the context of the words as how they are being used. And that is where you would admit, though, that the legislature can change how words are going to be used, correct? Sure, they could. But is the argument there that they need to specifically define them in order to do that? They have to define them where a person of ordinary intelligence can understand what they mean. I mean, I think a person of ordinary intelligence knows what invoice means, but it took your brief to be arguing that a person and contractor of relative, you know, of ordinary intelligence might reach a different conclusion. Yeah, and I can touch on that, Your Honor, but I want to finish with the specific services portion. If you take a look at the FAQs, and FAQ number 20, okay, this is the department saying they're going to enforce this statute, and a question is asked, well, what does specific services mean? And somebody asks a question, well, if I write down carpentry as per plans and specs, is that specific enough? And the answer is, I don't know. So in that instance, and that's just one of the 14 factors, this statute has enormous civil penalties, and they have enormous criminal penalties, and you have the enforcement agency saying, we don't know what specific services mean. That's a problem, and to your point with regard to context and as it relates to are there portions of this statute that the construction industry doesn't like? Absolutely. What are there, is there language within this statute that the construction industry doesn't understand? Yes, and they should understand what the statute means when it has enormous penalties in it, and it has criminal aspects to it. With regard to the invoice, because you raised the question, well, you know, most people would know what an invoice is, and when it comes to the invoice, the issue really comes down to, the statute doesn't define what an invoice would be, and you would say, well, great. You can look up the dictionary, and the dictionary says, well, it's a specific detailed list of items, but in the FAQs, the FAQs by the department say there's no requirement with regard to what it contains, what an invoice should contain. So your honor, as I represent construction contractors, and they're asked, hey, what do I need to have in an invoice? I have the Department of Labor and Industry saying, well, it doesn't need to have anything, and we have their counsel saying it needs to be a detailed list. So we're faced with, hey, if we don't have a itemized detailed invoice, guess what? All of those subcontractors, employees, become employees of the general contractor. They're faced with $10,000 penalties, and they're faced with the consequences of criminal penalties. And you're in your rebuttal time. Yeah. At this point, your honor, I will reserve my time. You may. Unless you have other questions. You may. Ms. Kimball, go ahead. Good morning. Good morning, and may it please the court. Janine Kimball, Assistant Attorney General, on behalf of Minnesota Attorney General Keith Ellison and the Minnesota Commissioner of the Department of Labor and Industry. Nicole Blissenbach. I will refer to appellants today as trade associations. Nearly nine months after the legislature voted to amend section 181.723, nearly nine months after, the trade associations brought this pre-enforcement action seeking extraordinary relief on an expedited basis. A preliminary injunction, or TRO, related to the newly amended statute. They challenged parts of the original statute, in place since 1996, and parts of the statute that were scheduled to go into effect, and did go into effect, a couple weeks after their motion was filed. They sought relief that was the opposite of preserving the status quo. Rather than seeking an injunction as to the amended statute only, they asked the district court to do away with the entire statute while this case was pending. The district court did not abuse its discretion when it denied the trade association's motion, and this court should affirm. Counsel, is it civil or criminal, this law? It's civil. Okay, what about the fact that it feeds into other statutes that clearly have big criminal penalties? I think drawing the connection to the separate criminal statutes is a leap, because the actual statute that the court is evaluating is plainly on its face civil. The fines that can be imposed are administered by the Department of Labor and Industry through an administrative process. In Minnesota, administrative agencies can give fines, right? Yes. Okay, that's all I needed to know. Many of our other states aren't that way. Yes, they can, and there is a statute under Chapter 4. I was just going to clarify, though, that the legislature does cabin the exercise of discretion with respect to fines under Chapter 14, Section 14.045. So today, your honors, I'll begin with that. Counsel, let me follow up on that just a little bit, if I could. It's my understanding that if a contractor is a public contractor, and they mischaracterize, miscategorize a worker, that they are disqualified for three years from public contracting, which would basically put them out of business. Why isn't that enough of a penalty to make this a criminal in nature? I have a couple responses to that, your honor. The first response is, as far as I can tell, that was only raised by an amicus. It's not clear to me that any of the members of the trade associations on whom they're relying for standing are in the public space. But further, I would just add, it's one market, right? It's the public market. It certainly is not closing off. The suggestion that a company is necessarily, in this hypothetical, not able to conduct business because one slice of the market is closed, I think does not... That depends on the company, right? The company might only do public contracts, right? Right, and so then I think then this court needs to look at what are the companies on whom the trade associations are relying for standing, and evaluate the information in front of the court. Did the district court address this point at all? I don't believe it was in front of the district court, your honor. At all? Correct. The impact on public contracts, no. So, I'll begin with the vagueness piece, the void for vagueness argument. Second, excessive fines. Third, the remaining data phase factors. And finally, the standing question. First, the district court did not abuse its discretion when it concluded the trade associations are not likely to succeed on their void for vagueness challenge. There is nothing unconstitutionally vague about the words and phrases the trade associations challenge. This court applies a two-part test to determine whether a statute is unconstitutionally vague. The statute first must provide adequate notice of the prescribed conduct, and second, it must not lend itself to arbitrary enforcement. And to the question about how the court evaluates whether there is fair notice, I wanted to direct the court's attention to the postscript case from this court in 1981. At Penn site 1225, sorry, I'm sorry, 1255. This court said courts traditionally have relied on the common usage of statutory language, judicial explanations of its meaning, and previous applications of the statute to the same or similar conduct. And in fact, when I look through the vagueness decisions, sometimes this court looks to dictionary definitions, and sometimes this court just looks at a word and says, yeah, like I'm a person. I have some common understanding. A person would have common understanding of the word. So to the question about who's the, from who's vantage point, I think this court has applied sort of a reasonable person, common understanding, what an average person would understand the word to mean. The most recent vagueness case that the trade associations cite where this court concluded a statute was unconstitutionally vague was from 1997. It's a long time ago. And then when you look at that case, it relies very heavily on I think a 1923 case, I think, from the United States Supreme Court. It's a Stevenson. Is the 1923 Supreme Court case still good law, counsel? Has the Supreme Court overruled it? Well, I'm not sure. I did not look at that. But in any event, this, the most recent case the trade associations have cited is the Stevenson case. And sorry, it was relying on a 1939 Supreme Court decision involving whether the definition of gang was was vague. And so I think it's it's fair to say this court is cautious about concluding that a state statute is unconstitutionally vague. On the on the fair notice piece, I wanted to highlight what this court said in the Grainid decision. I'm not this court. I'm sorry, the US Supreme Court. Sorry, said in the Grainid decision. And I'm quoting here because I really like it. Okay, condemned to the use of words, we can never expect mathematical certainty from our language. And so I think that's the US Supreme Court acknowledging that it is impossible for things to be mathematically precise. And that the the Constitution allows, this court says, the US Supreme Court says flexibility and reasonable breath rather than meticulous. Math is one thing, but your friend on the other side has suggested that DLIA and its frequently asked questions, it says we don't know. There's a there is a gap of some distance between an agency saying we don't know how to interpret this and seeking mathematical precision. So when I look at the FAQs, Your Honor, what I see is DLIA trying to answer based on the information that is given to them. So what I see is frankly, something very similar to what trade associations are doing here. Rather than actually presenting the contract, which we talk about contracts, but there is actually no contract in the record, without directing DLIA or the court to a contract, there's not much that DLIA can do except to say this is the best we've got, this is our interpretation, and obviously it's going to be it's going to depend on the specifics and the specifics aren't actually in front of DLIA. So I don't I think reading the FAQs doesn't suggest a difficulty and certainly doesn't suggest that the standard where this court is supposed to decide if sort of the common understanding of the word meets or doesn't meet that fair notice standard. I had a couple very specific points about the trade associations mentioned the word invoice. Sorry, I'm sorry, mentioned the contract and whether it needs to be signed within 30 days. They are not challenging that provision as vague. It seems to me to be the complete opposite of vague. Is the contract executed within a certain amount of time? And I think the declarations that were submitted by the trade associations don't actually say they can't do it. They just say they have not done it and it is maybe because it wasn't required. So it's not, I'm not really understanding. Don't you think that point really goes more towards whether it's a civil or criminal statute because if they fail to have a sign within 30 days, they may be subject to significant penalties. It may, Your Honor, go to that argument by the trade associations. I would also refer to our argument in our brief that this the language identifies the specific services to be performed or provided. It was waived. It wasn't argued below that it was vague and actually in this court, in the briefing, the trade associations don't identify any of the words in that phrase that are vague. The statute doesn't lend itself to arbitrary enforcement. I'll just acknowledge that in a pre-enforcement context under Village of Hoffman, more of the work is done in the first prong. But once you get to the second prong, it doesn't lend itself to arbitrary enforcement. I'll just reiterate that there are limiting factors in terms of the exercise of the Commissioner's discretion on fines under 14.045. And in Metro of Omaha, the court said an appeal right is a check on wrongful decisions and that is relevant to this court's determination of whether there's a, whether it lends itself to arbitrary enforcement. Turning to the excessive fines claim, the district court did not err, did not abuse its discretion when it concluded the trade associations are not likely to succeed on the merits of their excessive fines claim. The claim comes too early because no fines have been imposed and the excessive fines clause is not even implicated. I think it's easier to address this on the first piece, which is it comes too early. The trade associations don't cite pre-enforcement excessive fine challenge. I could not find one in the Eighth Circuit. I did find one in a different circuit, but the fine had already been imposed, but not paid. And so this, the, I think when the court looks at the actual test that is supposed to be applied, it's pretty clear why you don't see these pre-enforcement challenges because the, the court must look at to decide whether a fine is unconstitutionally excessive. The court must look at the size of the fine compared to the gravity of the offense to see if it is grossly disproportionate to the gravity of the offense. Here, there is no fine and there's no offense. So it's really impossible for the court to assess proportionality. The trade associations attempt to bring what I think is reasonably characterized as a facial challenge, but then they ask the court to decide the question based on this very narrow hypothetical where a company is totally innocent, totally accidental that they, that someone is in it, they wrongly classified as an independent contractor. But also the fines are like business-ending fines and I haven't seen a case that that has gone through that hypothetical approach and I don't think that it makes sense for the court to do so here. Third, the district court did not abuse its discretion when it evaluated the remaining data face factors and denied the trade association's motion for preliminary injunction. At the preliminary injunction stage, a plaintiff must make a clear showing that she, he, the entities is likely to meet their burden. This court announced in the Planned Parenthood decision or said in the Planned Parenthood decision legislation should not be enjoined lightly. Further, the purpose of a preliminary injunction is to preserve the status quo as the case is litigated. In this case, the status quo was the nine-part test that had been Minnesota law since the 1990s. Not this hypothetical world where the statute itself doesn't exist at all, which is what the the trade associations asked for at the district court. Further, there's no irreparable harm. I'm sure this this court often looks at how long it takes someone to walk into court to assess whether there really has been irreparable harm. Several of the words that they challenge as vague were in the statute last year. Some of them have been in the statute since 1996. That's really too late, but in this case the legislature passed the amendment in May of 2024. And we know that the trade associations were aware because they testified in front of the legislature and said what's wrong with the nine-part test and please delay the effective date of the statute. All right, so it passes in May of 2024 and then this complaint was not filed in this case until February 12th. That is a substantial delay and that should counsel against concluding there's irreparable harm. If there is no irreparable harm then the court, the district court, did not abuse its discretion when it denied the motion. There's nothing in the record. Is there about reinforcement or lack of enforcement actions that have been ongoing since If it's not in the record, that's fine. I don't believe it is. No, and I'll just add wondering if I was going to get a question like that. My understanding is open investigation matters are not public and so I mean we wouldn't have submitted anything about that. I would assume that if the trade associations had or their members had that information that would be helpful to them they would have submitted it at some point. But I haven't seen that in the record, Your Honor. Fourth, I'd like to address standing briefly. There's no credible threat of enforcement and the proposed conduct is not particularized enough to establish standing. A credible threat of enforcement isn't your own office gearing up to enforce this statute? So there's no doubt that the Attorney General and the Department of Labor and Industry have a connection to the enforcement of the statute and there is no doubt that they intend to enforce the statute. You've created a special unit to do that, haven't you? The the office has a unit on, I know that it is a priority of the office, I don't know about the unit. The DLI does have a misclassification unit, yes, and did receive funding in the last legislative session. It's about $350,000 per year. Not just construction misclassification, but misclassification writ large. That's the Department of Labor and Industry. On the continuum of credible threats, that seems to be rather high. It might be, Your Honor. Our perspective, our argument here is that the individuals, the Trade Association members that they're relying on for standing have not identified what specific future actions they're going to take and actually haven't suggested, I mean they're hypothetical of we're so innocent, we don't know what we're doing, we can't figure out the statute. They don't then present any information suggesting those are the types of... Well, isn't their argument that the statute criminalizes in some cases the past practice of the entire industry? I mean, that's what I take their case to be and that seems to me to be a pretty straightforward issue or establishment of standing. I mean, you may disagree with the merits of that argument, but I don't see how that undermines standing. Including the individual members of the trade organizations have been conducting business as described in the pleadings and the briefs and the argument is they're going to have to change all of that. I do think it's a fair reading interpretation that the Trade Association members may have to change their behavior. I think what's helpful in terms of standing is to look at some of the cases where there's been enforcement against the same sort of conduct that the plaintiffs have alleged they're going to engage in or where plaintiffs say, I plan to make this campaign expenditure and it's plainly violative of the law. Here we have members saying... They're saying we are currently operating and have been for multiple years. They have a stronger case in your example. Okay, and I do think, Your Honor, they also say we will comply with the statute and so it's not... So I think it's a little bit different, but I take Your Honor's point and I'll rely on my briefing on the standing piece. If Your Honors don't have any additional questions, then I'll simply say we ask this court to affirm. Thank you. Thank you, Mr. Redding. First and foremost, there was a question with regard to has there been enforcement, and what I'd like to point the court to is labor and industry when they submitted a request for funding to the state legislature and the joint appendix pages 102 and 103 they actually talk about they're looking for additional investigators to increase and strengthen enforcement of misclassification laws. So this isn't like they're now going to start. They're actually doing it now and they reference the investigations that they have done on joint appendix page 103. Additionally, what I didn't reference in my opening statement is there's a case involving Leroy Mayer. He's an individual of Merritt Drywall who was actually criminally prosecuted under 181.723 and Chapter 605. We reference that in our reply brief to the court. So as much as the appellees would like to say that this is not a criminal statute, nothing could be further from the truth. In fact, as I noted before, in the response brief to the preliminary injunction, it's docket 22, and I believe it's page 14 where the state actually notes that 181.723 does lead violations to lead to a criminal misdemeanor. So we certainly believe that this is a criminal statute in in nature.  Your Honor, to the question you're asking about as it relates to practice in the industry, one of the items that we raised relates to main expenses and costs and who incurs the main expenses and costs. And in the construction industry, it's very common, and by the way, there are declarations that are before the court that talk about all these practices that the declarants want to continue, but they're faced with criminal penalties and civil penalties. But in the in the construction industry, it's very common that a general contractor or the owner will purchase the material. So they'll purchase the lumber, they'll purchase the drywall, and then a contractor will in fact install those materials. And so the question becomes what is the main expense and cost of under a contract? And despite the appellee's statement to this court that, you know, things didn't change in this statute, that was a significant change. What did the district court, how did they handle this particular argument? Yeah, with this particular argument, the district court looked to a state court decision that interpreted the phrase main expense and said, well, under this unemployment decision, well, the main expense, you know, that's okay. We don't have to worry about it. But now we have the legislature that has added the word cost, and the district court ignored the fact that we now have new words that are incorporated into this statute. And so we have contractors wondering, well, because the word cost is vague, because it's unclear by adding the word cost, does that include the materials or not? And although the state could say, well, you could have relied on expense, well, the legislature added this additional word, or two words, and cost. And so contractors are faced with, well, what do we do? And of course, there's no guidance from Dolly with regard to what that means. And in fact, the only way they can provide guidance is to go through rulemaking. You get a sentence to conclude, counsel. In summary, we respectfully request that this court reverse the district court's order and issue a preliminary injunction in adjoining the enforcement of this statute. Thank you. Thank both counsel for their argument. Case 25-1480 is submitted for decision by the court. Ms. Grupe, please call the next case.